IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FILED

AUG 2 2010

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

ALVIN LYNN TRANTHAM, )
 )
Petitioner, )
 )
v. ) Case No. CIV 07-156-JHP-KEW
 )
GREG PROVINCE, Warden, )
 )
Respondent. )

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on petitioner's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at Dick Conner Correctional Center in Hominy, Oklahoma, attacks his conviction in Bryan County District Court Case Number CF-2003-594 for Child Sexual Abuse. His sole ground for relief is that the admission of petitioner's oral and written statements to Choctaw Tribal Investigator R. D. Hendrix violated the Fifth Amendment. The respondent concedes that petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review and has submitted the transcript of petitioner's nonjury trial and the Original Record for CF-2003-594.

The Oklahoma Court of Criminal Appeals set forth the pertinent facts as follows:

> When she was approximately ten years old, I.P. told her grandmother that Trantham (her step-grandfather) had sexually abused her two months earlier. I.P.'s grandmother took her to the local hospital where she reported the incident. D.H.S. took custody of the child. A physical exam revealed I.P. had very little of her hymen intact. Carolyn Ridling, a sexual assault nurse at Texoma Medical Center, testified that the damage to I.P.'s hymen could be caused only by some form of penetration and that the damage had occurred more than 72 hours prior to the examination.

> Trantham denied any wrongdoing during initial interviews. He was later asked to meet with Officer Hendrix of the Chowtaw [sic] Tribal Police at a local motel to take a polygraph examination. Trantham voluntarily agreed to the polygraph examination and met with Officer Hendrix on October 15, 2003. They were the only two present in the motel room. Before the examination, Officer Hendrix reviewed with Trantham the nature of the examination and gave Trantham a form containing a statement of *Miranda* rights and waiver to sign and a personal history inventory to fill out. Trantham asked why he was given the *Miranda* rights and waiver form to sign. Officer Hendrix told him that it was part of the required paperwork, but did not go over the form word by word, or explain the *Miranda* rights to Trantham. Officer Hendrix told Trantham to read it and if there was anything he did not understand about the rights form, he could ask questions. Officer Hendrix testified that Trantham signed the form and said he understood it.
>
> Officer Hendrix conducted the polygraph examination and read the polygraph results to show that Trantham was giving deceptive answers concerning whether he had sex with I.P. Officer Hendrix told Trantham he did not believe him and that if Trantham told him what had actually happened, he would relay to the D.A. that Trantham agreed to tell the truth. Trantham completed and signed a written statement admitting he had inserted his penis into I.P.'s vagina. He then left the motel alone. He was arrested two weeks later.

*Trantham v. State*, No. F-2004-1105, slip op. at 1-3 (Okla. Crim. App. Mar. 17, 2006) (footnote omitted).

Petitioner argued in his direct appeal that "after the polygraph when Hendrix repeatedly told him he had failed the exam and needed to tell the truth, the circumstances and the questioning turned into custodial interrogation." *Id.* at 3 n.2. The OCCA denied relief on petitioner's claim that the alleged custodial interrogation required proper advice and that he signed the *Miranda* waiver provided by Hendrix "without a full understanding of the rights he was waiving and the consequences of waiving those rights." *Id.* at 3.

> The record shows, and Trantham concedes, that he voluntarily met Officer Hendrix at the motel for the polygraph exam. He willingly filled out

2

the paperwork and took the exam. After making his statement, he left. There is nothing in the record to show the encounter became custodial because Officer Hendrix informed him of the exam results and asked him to tell the truth several times. After considering the totality of the circumstances, we find that no reasonable person in Trantham's situation would have felt that his freedom of action was restrained to a degree associated with formal arrest following the polygraph and thus he was not "in custody" and entitled to *Miranda* warnings. The trial court did not err in admitting and considering his statement.

*Id.* at 4-5.

The respondent alleges the Oklahoma Court of Criminal Appeals (OCCA) considered and found no merit in this claim in petitioner's direct appeal, and under the applicable federal habeas corpus statutes, habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

*Miranda* warnings are required when the defendant is in custody and subject to interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A person is "in custody" for the purposes of *Miranda*, if he "has been deprived of his freedom of action in any significant way," *Miranda*, 384 U.S. at 444, or his freedom of action has been curtailed to a "degree associated with a formal arrest," *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam).

Two discrete inquiries are essential to the determination: first, what were the

3

circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. . . . The first inquiry, all agree, is distinctly factual. State-court findings on these scene- and action-setting questions attract a presumption of correctness under 28 U.S.C. § 2254(d). The second inquiry, however, calls for application of the controlling legal standard to the historical facts.

*Thompson v. Keohane*, 516 U.S. 99, 113 (1995) (footnote omitted).

"The determination of custody, from an examination of the totality of the circumstances, is necessarily fact intensive." *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993). We thus avoid hard line rules and instead allow several non-exhaustive factors to guide us. First, we consider "the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will." *Id.* Second, we look at "the nature of questioning," where "prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave." *Id.* Finally, by using the following helpful guideposts, we check whether police dominate the encounter: [S]eparation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers; display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled. *Id.* at 1518-19. Although these factors are useful, we emphasize that we must look to the totality of the circumstances and consider the police-citizen encounter as a whole, rather than picking some facts and ignoring others.

*United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008).

After careful review of the totality of the circumstances, the court finds petitioner was not "in custody" at any time when he met Officer Hendrix at a motel, not a police station, for approximately two hours (Tr. 38-39). The court further finds the determination of petitioner's claim by the OCCA was not contrary to, or an unreasonable application of, clearly established federal law, and the OCCA's decision was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

4

**ACCORDINGLY**, the Magistrate Judge recommends that this action be, in all respects, dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties are given fourteen (14) days from being served with a copy of this Report and Recommendation to file with the Clerk of the Court any objections with supporting briefs. Failure to file timely written objections to the Magistrate Judge's recommendations may result in waiver of appellate review of factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**DATED** this 2nd day of August 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE